No. 31.—DAVID G. WORSHAM, NEEDHAM MIMS, and DRURY W. Cox, plaintiffs in error, *vs.* WILLIAM F. BROWN, defendant in error.

[1.] An assignee of an execution does not acquire, by virtue of the transfer, a right to recover damages for a fraud alleged to have been committed against the original plaintiff, four years before the title of the present holder accrued.

This was a bill in Equity, tried before Judge Floyd, in Bibb Superior Court, November Term, 1847.

At the hearing, and after the answers of the plaintiffs in error, who were defendants below, were filed, they moved, by their counsel, to dismiss the bill, on the ground that the complainant had not made such a case as would entitle him to relief.   Their motion being overruled by the court below, they excepted.

For the facts of the case, the reader is referred to the opinion delivered by the Supreme Court.

POWERS, HUNTER and HALL, for the plaintiffs in error.

POE and NISBET, for the defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The facts of this case, so far as they are necessary to be stated, in order to explain the judgment which we are about to pronounce, are briefly these: N. H. Beall, in 1839, held an execution of considerable amount against Drury W. Cox. Worsham, one of the defendants below, agreed to pay off the *fi. fa.* to Beall, and take a transfer to himself, provided Cox would advance $1,325 of the money. This was done, and the claim assigned to Worsham by Beall, for the whole amount due thereon. This execution was levied in November, 1840, on eight negroes belonging to Cox, which were sold by the Sheriff the first Tuesday in January, 1841, for $3,226. Just four years afterwards, Stegall & Wood transferred to Brown, the complainant in the bill below, twenty-four Justice's Court *fi. fas.* which they held against Drury W. Cox. Brown shortly thereafter filed his bill against Worsham, Mims & Cox, setting forth, in substance, the foregoing facts; and further—that these executions, which he had purchased, were present at the sale of Cox's negroes, and would have claimed and received the money arising therefrom, but that the whole fund was exhausted in the satisfaction of Beall's *fi. fa.;* and that the complainant was ignorant at the time, that $1,325 of this debt had been advanced to Beall by Cox himself. The bill further charges, that this $1,325 was applied on the day of sale to the discharge of the *note* debts of Cox, instead of to his *fi. fas.* which were next in dignity to that of Beall. The prayer is, that Worsham & Mims, who are charged to be confederates in the fraud, be decreed to pay the sum of $1,325, with interest thereon, to the debt of complainant against Cox, or so much as may be needed to extinguish the same.

At the hearing of the cause, and after the answers were filed, the defendants, by their counsel, moved to dismiss the bill, on the ground that the complainant had not made such a case as would entitle him to relief.

This motion being overruled, various other proceedings were had in the further progress of the cause, some of which are excepted to, as appears from the record, but it becomes wholly needless to consider them, from the view which we have taken of this case.

Was there error in the Court below, in refusing to dismiss this bill? Was the complainant, in other words, entitled to relief?

We are inclined to the opinion, that he was not, under the bill as it stands, because he no where avers that Cox is insolvent, and that there is not ample property to pay the execution. Still, as that fact is made evident by the answers, we would send the cause back, with instructions to amend the bill in this particular. But we are clear that the bill could not be so amended as to afford relief. The alleged fraud was commenced in 1839, when Beall's execution was assigned to Worsham, and consummated, if at all, in January, 1841. Brown never become the owner of the executions, which he is seeking to inforce, *until four years from this date*. He cannot interfere. What did he purchase? The executions and judgments on which they issued, and the lien which, by law, they had on the property of Cox. Stegall & Wood could not convey to him the right to sue for this fraud, either at law or in equity. Much less does it pass as an incident to the assignment. The very attempt to convey this right would constitute, *in spirit*, that offence against public justice, forbidden by 32 *Hen. VIII.*, which has been adopted in this State. It would be selling a law-suit.

The complainant's bill alleges that the $1,325, which it seeks to recover, was appropriated on the day of sale, to the *note* debts of Cox. If this be true, the fund never can be reached by *Brown*. Had it remained in the hands of *Worsham*, Brown might, perhaps, proceed against Worsham as the Trustee of Cox, for the amount of this fund. But if it has been paid out to the debts of Cox, even of an inferior grade, before the title of the assignee accrued, (and such is the statement in the bill,) it can never be reclaimed by him. Suppose Brown were to garnishee Worsham, and Worsham should admit the facts relative to this $1,325 to be true, as charged in complainant's bill, to-wit: that in January, 1841, more than four years prior to the service of the summons of garnishment, he had, under color of his execution, received $1,325 more than was really due upon it; but that on that day, he had,

by the consent, and under the direction of Cox, applied it to the payment of his (Cox's) note debts, could Brown get a judgment against Worsham ? I apprehend not; for long before his right accrued, this money was properly paid out. Equity may afford him a better remedy ; it cannot enlarge his right.

This is not an effort to set aside the sale itself, as fraudulent, as was done in *Thurmond and Reese*, 3 *Kelly*, 449. In that event, the lien of the executions would attach on the property, notwithstanding the transfer. But the sale is admitted to have been *bona fide.* The complaint is, that the proceeds were improperly applied.

The bill does not make a case that will authorize a recovery— and consequently, the judgment below must be *reversed.*